56 CCPA

**Application of Robert R. MYERS.**

**Patent Appeal No. 8004.**

United States Court of Customs
and Patent Appeals.

Oct. 24, 1968.

Rehearing Denied Dec. 5, 1968.

Donald H. Zarley, Bruce W. McKee, Dennis L. Thomte, Dick, Zarley, McKee & Thomte, Des Moines, Iowa, for appellant.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of article claims 1–4 of application serial No. 246,300, filed December 17, 1962, entitled "Method of and Means for Producing Printing Plates." Method claim 6 is allowed.

The sole issue before us is the propriety of the rejection of claims 1–4 as "fully met" (i. e., anticipated) by the disclosure of the sole reference:

| | | |
|---|---|---|
| Johnson et al. | 3,145,654 | Aug. 25, 1964 |
| | filed | Apr. 8, 1957 |

The appealed claims are directed to plastic-backed electrotypes. In the prior art, an electrotype is a printing plate made in part by an electroplating operation. Type, original plates, halftones, etc., are locked in a chase and an impres-

sion thereof is made in a thermoplastic material which is stripped from the type and rendered electrically conductive by a thin coating of a suitable substance. This mold is then placed in an electroplating bath and the mold is plated with some metal such as copper. This plating has long been known in the art as a "shell." It is not sufficiently strong to be used for printing and has to be backed. The practice has been to back it by pouring a layer of molten metal alloy, mostly lead, against the rear surface of the shell. There are several attendant disadvantages, not the least of which is the weight of the lead, and other means of backing have been sought. "Plastic" or synthetic resin backings have been devised by appellant and others and it is a plastic backing, reinforced by a metallic plate in a certain way, that is the subject matter of the present claims. It is also the subject of the reference.

The precise invention at bar is defined in the appealed claims which read:

1. As a new article of manufacture, a printing shell having an external printing surface and an internal surface of irregular contour defined by said outer printing surface, a plastic layer substantially coextensive with the area of said shell, a substantially coextensive perforated stiffening metal layer which is rigid, tough and strong to rigidly resist bending, said metal layer being disposed adjacent said plastic layer and being *separated from engagement with said printing shell by said plastic layer,* said plastic layer extending into and completely filling perforations of said metal layer for interlocking said plastic and metal layers, said metal layer being disposed closely adjacent the inner surface of said printing shell and said plastic filling irregularities in the adjacent inner surface of the printing shell, and an adhesive rigidly uniting the plastic lay-

er to the irregular inner surface of said printing shell. [Emphasis ours.]

2. As a new article of manufacture, a laminated printing plate unit according to claim 1 wherein said adhesive is provided by a portion of said plastic layer.

3. As a new article of manufacture, a laminated printing plate unit according to claim 1 wherein said metal layer is imbedded in said plastic.

4. As a new article of manufacture, a laminated printing plate unit according to claim 1 wherein said metal layer is accurate in shape.

The principal argument in the case resolves about the italicized words in claim 1. Note should also be taken of the fact that, as is emphasized by claim 2 and taught by the specification, claim 1 does not necessarily call for an "adhesive" as an element separate and distinct from the "plastic layer" since, as is clear from claim 2, the plastic layer itself may function as an adhesive,[1] i. e., be self-adhering to the shell.

Appellant discloses that his claimed plate may be made in various ways using various materials. One way is to place a perforated aluminum plate about 1/8″ thick on the back of the shell and a sheet of thermoplastic material on top of the plate. This sandwich is placed in a heated molding press, between the platens thereof (which appellant calls "jaws"), and is warmed to the point where the plastic will flow. The press is then closed, squeezing some of the now fluid plastic through the holes in the plate to its underside and into the space between the shell and the plate. In connection with this process, appellant's specification makes no disclosure whatever as to *how* a separation is effected which meets the claim limitation that the metal plate is separated from engagement with the shell by the plastic layer. There is no

1. While this might raise questions about the form of claim 1, the Patent Office does not appear to have objected to it.

express disclosure of the separation. All the time the plastic is being squeezed through the holes in the plate the plate is under the pressure of the press. Appellant's specification says the pressure is 100 tons, without saying whether that is total or per some unit of area. His brief implies this high pressure is significant with respect to separation of the plate and shell, but we fail to see why.

An alternative method disclosed is to use a "cold liquid plastic * * * which would be capable of hardening either by the atmosphere or by chemical treatment." In connection with the use of such plastic, there is no disclosure of how it is applied or how it gets into a position to separate the shell from the plate and eliminate contact therebetween.

The relevant portion of the Johnson disclosure teaches the making of plastic-backed electrotype shells, a perforated aluminum reinforcing plate being placed "in the interior of the plastic backing * * *." Johnson employs special formulations of epoxy resins which are initially liquid and have the property of "cold setting." He may use certain polyesters but does not prefer them. He discloses that when a reinforcing plate is used, resin is first applied to the copper shell up to the height of the relief areas present in the shell and the supporting plate is then positioned directly on the relief areas. Thereafter, the remaining resin is applied on top of the plate to the ultimate desired thickness.

The examiner and the board agreed in finding that the printing plates of the appealed claims are anticipated by Johnson. It is admitted by appellant that Johnson shows plastic-backed, perforated-plate-reinforced electrotypes in which all the irregularities of the shell are filled with plastic in the space between the plate and the shell. It is argued, however, that "Johnson's plate fails [to anticipate] in the important respect that the printing shell is in direct engagement with the backing plate, and this clearly violates the language of the claims which prohibits this relationship." The exam-

iner and the board both disagreed with this contention. The board said:

> The Examiner seems to have concluded that pouring and curing the resin on both sides of the reinforcing plates of either appellant's construction or the construction disclosed by Johnson et al. would
>
> "* * * cause the perforated metal plate to be separated from, but remain adjacent to, the printing shell * * *."

(See page 5 of the Answer.)

We have the examiner's Answer before us and feel that the board was clearly correct in its understanding of it. The board further concluded that the separation of the reinforcing plate and the electrotype shell was inherent in the Johnson construction. It reasoned to the effect that if it happens in appellant's processes, it must also happen in Johnson's process. What's sauce for the goose is sauce for the gander. Appellant insists that it does happen in his processes as disclosed, though it is not mentioned or illustrated, and that he has support for this claim limitation in his specification though it gives no explanation of why the separation would occur.

■ The argument appellant makes in this court on this point is stated in point "D" of his brief:

> The Board Erred in Concluding That Appellant's Stiffening Metal Layer Was Not Separated From Engagement With the Printing Shell by a Plastic Layer.

We are unable to find any such conclusion on the part of the board and we therefore reject the argument. The board's conclusion was that if the separation occurs in appellant's processes, it occurs in Johnson's. We agree with that conclusion.

■ We likewise reject appellant's related argument that the board based its decision on the operativeness or inoperativeness of appellant's method as com-

pared to Johnson's method. The board seems rather to have based its decision on inherency in both processes, agreeing with the examiner that separation actually occurs (no doubt due to the flow of fluid plastic between the reinforcing plate and its points of initial contact with the shell and the wetting of contiguous surfaces). Appellant puts this forward as a point "conclusively established" as to his own plates. We accept it and also accept the board's conclusion that it happens in Johnson's process.

■ Appellant argues that Johnson does not disclose that his metal reinforcing plate is "rigid, tough and strong," as claimed. The board adequately answered this by pointing out that the characteristics are relative terms and that Johnson discloses his plate as adequate to hold the electrotype in curved form and therefore sufficiently rigid to resist bending. It is further argued that Johnson does not show whether his perforations are full, half filled, or empty. This was answered adequately in pointing out that the liquid resin fills all the details of the shell and, if it will do that, it must at the same time fill the perforations. We see no merit in these arguments.

■ The remaining argument by appellant is one of which he is not certain himself. Saying that "appellant is uncertain as to this fact," it is contended that the board erred in basing its decision in part on 35 U.S.C. § 103 whereas the examiner's rejection was predicated on 35 U.S.C. § 102. The argument rests on a single use of the term "obvious" in the board's opinion in the following paragraph:

> On the basis of the record before us, we conclude that the separation of the reinforcing plate and the electrotype shell is either obvious from or inherent in the Johnson et al. construction.

The Patent Office Solicitor does not read this as a section 103 rejection and neither do we. We read it as a statement that to one skilled in the art the *fact* of separation would be obvious from a reading of

Johnson's disclosure, because it is inherent in the process he discloses. Appellant insists that our review must be based on the propriety of denying appellant patent protection under 35 U.S.C. § 102. That we have done. We find it proper.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge (concurring).

The reasons why I am unable to join the opinion of the majority are:

1. For reasons more fully set forth in my dissenting opinion in In re Wiechert, 54 CCPA 957; 370 F.2d 927; (1967) the board here consisting of two acting examiners-in-chief does not constitute a tribunal authorized by the statute to entertain jurisdiction of the appeal. Hence, I think we should decline to review it. Since, the majority in *Wiechert* did not accept the position, my necessary acceptance of the decision of the majority therein dictates that I should participate in this opinion and I do so on this basis.

2. After consideration of the majority opinion I concur in the result but not in the reasoning by which that result is supported. The appealed claims are product claims. To place the decision to affirm on a comparison of the processes employed by applicant and by the Johnson et al. reference seems to me to be both improper and unnecessary. It requires speculation as to what might happen to the positioning of the supporting plate in conducting the respective processes. I am not persuaded that applicant's *process as disclosed* and Johnson's *process as disclosed* would *necessarily* produce the same article insofar as the possible positioning of the metal reinforcing plate is concerned. Rather, I agree with the board's statement:

> We have studied the instant specification and drawings without finding a clear indication therein that appellant's reinforcement is separated by the resin from the printing shell, and even less, why this should be so. Figure 5 appears to show the reinforcing plate 10 resting on at least two relief

areas of the electrotype which is identified as 11 in Figure 3.

Appellant stresses the limitation in the appealed claims which requires that the metal reinforcing plate be

* * * disposed adjacent said plastice layer and being separated from engagement with said printing shell by said plastic layer, * * *.

This limitation when related to the disclosure in the specification describes the construction of Fig. 5 of the drawings and is consistent with the statement in the specification:

More specifically, the object of this invention is to provide a lightweight laminated printing plate incorporating a perforated tough metallic plate wherein the metal plate is imbedded in a plastic backing material.

It seems to me that the disclosures in Johnson et al as to the position of his reinforcing plate would necessarily show plastic separation of the reinforcing plate and the electrotype at all areas except at certain peak locations of the electrotype projecting above the general level thereof corresponding to those portions of the relief areas which appellant in Figure 5 of his application shows to be in contact with the reinforcing metal plate in the finished electrotype. On this basis, I would agree with the board that "the separation of the reinforcing plate and the electrotype shell is either obvious from or inherent in the Johnson et al. construction."